**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

FILED

00 JUL 19 AM 11: 47

CLER U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

MAGTRL

**LOUIS T. SPELL,**

      **Plaintiff,**

**v.**                              **Case No. 8:98-cv-1092-T-25E**

**LEMCO TOOL CORPORATION,**

      **Defendant.**
_____/

**O R D E R**

THIS MATTER is before the court on **Defendant's Motion for Summary Judgment Dismissing Counts[] 2, 3 and 4 of Plaintiff's First Amended Complaint** (Doc. 47) and amended substitute brief in support (Doc. 73), Plaintiff's response in opposition (Doc. 62), Defendant's reply (Doc. 75), and Plaintiff's Supplemental Response (Doc. 74).

I.

The undisputed facts establish that in 1989, Plaintiff invented an overlash roller, a device designed to aid in fiber optic cable installation.  Plaintiff met Mr. Glenn Miller, President of Lemco, and thereafter supplied a sample of the overlash roller to Defendant.[1]  On May 2, 1990, Plaintiff filed an application for a patent on the overlash roller.  On May

_____

[1]The parties dispute whether the sample was solicited by Defendant.  However, this factual dispute is immaterial to the court's determination of issues raised by Defendant's motion for summary judgment.



11, 1990, Mr. Miller sent Plaintiff a letter which conveyed an offer to pay Plaintiff a five percent royalty for the exclusive right to manufacture and distribute overlash rollers using Plaintiff's design. By his letters of August 20, 1990, and June 15, 1992, Plaintiff rejected Defendant's May 11, 1990, offer for an exclusive license.

On May 26, 1992, the United States Patent and Trademark Office issued Plaintiff Design Patent number 326,404 (hereinafter "'404 patent") for the overlash roller. Plaintiff alleges on information and belief that Defendant has manufactured the overlash roller since 1990 or 1991 without his permission or authority to do so. However, he has received no compensation from Defendant for this alleged misappropriation.

Plaintiff brings the instant action alleging patent infringement (Count 1), misappropriation (Count 2), breach of implied contract in fact (Count 3), and breach of contract implied in law (Count 4).

Previously, Defendant filed a motion to dismiss Counts 2, 3, and 4 of Plaintiff's First Amended Complaint for failure to state a claim for which relief can be granted. By Order dated July 12, 1999, this court denied Defendant's motion, holding that Plaintiff's state law claims are not preempted by federal patent laws and determining that Pennsylvania's statutes of limitations are applicable to Plaintiff's state law claims and thus limits Plaintiff's right of recovery to damages sustained during the limitations period preceding the filing of the suit. See (Doc. 30).

By the instant motion, Defendant seeks summary judgment on Counts 2, 3, and 4 of Plaintiff's First Amended Complaint (Doc. 7). With respect to Plaintiff's state law claims for misappropriation of trade secrets (Count 2), breach of contract implied in fact

2

(Count 3), and breach of contract implied in law (Count 4), Defendant argues that all three

counts are barred by statutes of limitations as to the period before May 26, 1992; that

these three counts cannot be maintained from May 26, 1992, forward to the extent that

the state law is preempted by or conflicts with federal patent law; that all three counts

cannot be maintained because the overlash roller was placed in the public domain both

before and after the patent was issued; and that Plaintiff's claim for breach of implied

contract in law (Count 4) cannot be maintained because Plaintiff's express rejection of

Defendant's contract offer.

## II.

The court shall grant summary judgment for the moving party only when "there is

no genuine issue as to any material fact and . . . the moving party is entitled to a judgment

as a matter of law." Fed. R. Civ. P. 56(c). The court may look to "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits," in determining whether summary judgment is appropriate. Fed. R. Civ. P.

56(c). The movant bears the exacting burden of demonstrating that there is no dispute as

to any material fact in the case. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);

Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993).

Once the moving party satisfies its burden, the burden shifts to the non-moving

party to establish the existence of a genuine issue of material fact. See Celotex, 477 U.S.

at 324; Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994). The non-movant must

designate specific facts showing a genuine issue for trial beyond mere allegations or the

3

party's perception.  See Perkins v. School Bd. of Pinellas County, 902 F. Supp. 1503

(M.D. Fla. 1995).  It must set forth, by affidavit or other appropriate means, specific facts

showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e).

When deciding a motion for summary judgment, "[i]t is not part of the court's

function . . . to decide issues of material fact, but rather determine whether such issues

exist to be tried . . ." and "[t]he court must avoid weighing conflicting evidence or making

credibility determinations."  Hairston, 9 F.3d at 919 (citing Anderson v. Liberty Lobby,

Inc., 477 U.S. 242 (1986)).  The only determination for the court in a summary judgment

proceeding is whether there exists genuine and material issues of fact to be tried.  See

Hairston, 9 F.3d at 921; see also Little v. United Technologies, Carrier Transicold Div.,

103 F.3d 956, 959 (11th Cir. 1997).   All the evidence and inferences from the underlying

facts must be viewed in the light most favorable to the nonmoving party.  See Combs v.

Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997).

III.

A.

With respect to Counts 2 and 3, Defendant argues that Plaintiff's claims for

misappropriation and breach of an implied contract, essentially state an identical cause of

action, that Defendant breached an obligation to maintain confidence of Plaintiff's trade

secret by using or disclosing the trade secret.  Defendant further argues that both these

counts must be dismissed from May 26, 1992, forward, because Plaintiff disclosed the

4

trade secret and placed the overlash roller into the public domain upon issuance of the patent on that date.[2]

Under Florida's Uniform Trade Secrets Act, chapter 688, Florida Statutes,[3] misappropriation is defined in this context as

> [d]isclosure or use of a trade secret of another without express or implied consent by a person who . . . [a]t the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

Fla. Stat. ch. 688.002(2)(b)2.a. The Act further provides:

> (4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Id. at ch. 688.002(4). By definition, information that is not kept secret or confidential is not a trade secret. See Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470 (1974) ("By

---

[2]In his response in opposition to summary judgment, Plaintiff addresses this contention in passing: "Lemco has argued that the issuance of a patent vitiated any confidentiality that otherwise might have attached to the overlash roller. However, Lemco conveniently has glossed over the fact that it seeks by way of Counterclaim to declare the patent invalid and unenforceable." (Doc. 62 at 11). However, Plaintiff does not refute the substance of Defendant's argument.

[3]Although Plaintiff brings his state claims under common law, the misappropriation claim is statutory; Florida's Uniform Trade Secrets Act has displaced tort law regarding trade secret misappropriation. See All Pro Sports Camp, Inc. v. Walt Disney Co., 727 So. 2d 363, 367 (Fla. Dist. Ct. App. 1999).

AO 72A
(Rev 8/82)

definition a trade secret has not been placed in the public domain."); Thomas v. Alloy Fasteners, Inc., 664 So. 2d 59 (Fla. Dist. Ct. App. 1995) (holding that customer list did not constitute trade secret where the customer names are available from public sources and there was no secret as to the class of likely customers); Clark v. State, 670 So. 2d 1056, 1058 (Fla. Dist. Ct. App. 1996) (reversing a conviction for theft of trade secrets where the materials allegedly stolen were not secret or confidential).

An application for a patent must include a specification containing "a written description of the invention, and the manner and process of making it and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, . . . to make and use the same . . ." 35 U.S.C. § 112; see also 35 U.S.C. § 111; Kewanee Oil, 416 U.S. at 481.  When a patent is granted, the information contained in it enters the public domain.  See Kewanee Oil, 416 U.S. at 481; Universal Oil Co. v. Globe Co., 322 U.S. at 484.

> Once an inventor has decided to lift the veil of secrecy from his work, he must choose the protection of a federal patent or the dedication of his idea to the public at large.  As Judge Learned Hand once put it:  "[I]t is a condition upon the inventor's right to a patent that he shall not exploit his discovery competitively after it is ready for patenting; he must content himself with either secrecy or legal monopoly."

Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 149 (1988) (quoting Metallizing Eng'g Co. v. Kenyon Bearing & Auto Parts Co., 153 F.2d 516, 520 (2d Cir. 1946)).

6

AO 72A
(Rev 8/82)

Here, the '404 patent was issued on May 26, 1992.  By seeking patent protection, Plaintiff disclosed his trade secret and placed the design of the overlash roller into the public domain.  Because the design was no longer confidential after issuance of the patent, Plaintiff cannot claim that Defendant misappropriated his trade secret or breach an implied contract to maintain the confidentiality of the design from May 26, 1992, forward.

Likewise, Count 4, Plaintiff's claim for breach of contract implied in law, which is a claim for unjust enrichment, cannot be maintained after May 26, 1992, because of public disclosure.  To establish the elements for a breach of contract implied in law, or unjust enrichment or quasi contract, the Plaintiff must show that (1) he conferred a benefit on the defendant, (2) the defendant has knowledge of the benefit, (3) the defendant voluntarily accepted and retained the benefit conferred, and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff.  See Tooltrend, Inc. v. CMT Unitensili, SRL, 198 F.3d 802, 805 (11th Cir. 1999) (citing Greenfield v. Manor Care, Inc., 705 So. 2d 926, 930-31 (Fla. Dist. Ct. App. 1997), rev. denied, 717 So. 2d 534 (Fla. 1998)); Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co., 695 So. 2d 383, 386 (Fla. Dist. Ct. App. 1997).  The fourth element is not met where the idea is not novel.  See Alevizos v. John D. and Catherine T. MacArthur Foundation, No. 97-3215, 1999 WL 89043, at *5 (Fla. Dist. Ct. App. Feb. 24, 1999).  "Non-novel ideas are in the public domain and may be used by anyone; it is therefore not inequitable to allow a defendant to use such an idea without paying for it." Id.  Indeed, Plaintiff concedes that "a product or concept which already is in the public

7

domain may not be the subject of a contract implied in law." (Doc. 62 at 15-16) (citing Alevizos, 1999 WL 89043, at *5).[4]

Accordingly, summary judgment is appropriate on Counts 2, 3, and 4 insofar as Plaintiff seeks damages subsequent to issuance of the patent on May 26, 1992.[5]

## B.

In regard to Plaintiff's claims for damages during the period preceding issuance of the patent, Defendant argues that Counts 2, 3, and 4 are barred by statutes of limitations.[6] Previously, this court found that, under Florida's conflict of laws rules, Pennsylvania's statutes of limitations apply to Plaintiff's state law claims. See (Doc. 30 at 5-9). Pennsylvania imposes a two-year limitations period for claims of misappropriation of trade secrets and a four-year limitations period for implied contract claims, and Plaintiff's recovery is thus limited to damages sustained during these respective time periods

---

[4]By Defendant's Motion for Summary Judgment Dismissing Count 1 of Plaintiff's First Amended Complaint (Doc. 81), Defendant seeks summary judgment on Plaintiff's patent infringement claim primarily on the grounds that the patent is invalid because the subject matter of the patent is functional rather than ornamental. This motion is currently under advisement with the court. Even if the court finds in favor of the Defendant on the issue of validity of the '404 patent, this result is unchanged, since the issuance of the patent nonetheless placed the design in the public domain.

[5]Because the court has determined that Plaintiff's claims under Counts 2, 3, and 4 cannot be maintained as a matter of law after May 26, 1992, because of public disclosure of his trade secret by the issuance of the patent, the court needs not address Defendant's argument that these state law claims are preempted by federal patent law or are barred by the Supremacy Clause. In all likelihood, however, such counts are preempted.

[6]Plaintiff does not address this argument in his response or supplemental response. See (Docs. 62, 74).

8

preceding the filing of the suit.  See 42 Pa. Const. Stat. Ann. §§ 5524, 5525;  see also id.

at 7-8, 9 (citations omitted).

Here, Plaintiff filed his claim on May 22, 1998.  Thus, Plaintiff's claim for damages

resulting from any misappropriation of trade secrets is limited to the period of time after

May 22, 1996, and his right of recovery, if any, for breach of implied in fact contract or

implied in law contract are limited to the period after May 22, 1994.[7]


IV.

Accordingly, it is **ORDERED** that **Defendant's Motion for Summary**

**Judgment Dismissing Counts[] 2, 3 and 4 of Plaintiff's First Amended Complaint**

(Doc. 47) is **GRANTED**.

**Done and Ordered** in Tampa, Florida, this 19th day of July 2000.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

---

[7]Because the court has already determined that Plaintiff is not entitled to relief after May 26, 1992, the practical effect of this ruling is that all recovery on Plaintiff's state law claims is completely barred.  Thus, the court needs not consider whether summary judgment is appropriate on these counts because of public disclosure prior to issuance of the patent.

AO 72A
(Rev.8/82)